UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN D. ROSSI, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-957 |
| | § | |
| CITY OF HOUSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.    INTRODUCTION

Pending before the Court is the defendants', Officer C.R. Rohling, Houston Police Officers 1, 2, 3 ("unidentified officers") and the City of Houston ("Houston" or the "City") (collectively, "the defendants"), motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket No. 40). Also before the Court is the plaintiff's, Steven Rossi, response (Docket No. 47) and the defendants' reply (Docket No. 48). Having carefully considered the parties' submissions, the record and the applicable law, the Court finds and concludes as follows.

### II.    FACTUAL BACKGROUND

Steven Rossi is a resident of Harris County, Texas. The City of Houston is located in Harris County, and Officer Rohling and the unidentified officers are police officers in the Houston Police Department. This suit arises out of events that occurred in the early morning hours of April 1, 2010.

The following facts are undisputed: on or about April 1, 2010, Rossi met two friends for dinner at a restaurant near his home. When Rossi attempted to drive home after the meal, his vehicle would not start. One of Rossi's dinner companions jump-started his battery, which

remedied the problem. As Rossi drove home, he observed a police car, overhead lights flashing and siren wailing, pursuing his vehicle. Rossi did not stop; instead, he continued to his residence, driving through the gate at the entrance of the driveway, before coming to a complete stop. Rossi claims he did not stop because he was concerned his car battery would die again.

What happened next is the subject of dispute. Rossi claims that immediately upon exiting his vehicle, Officer Rohling struck him in the temple with a police-issued flashlight. Rossi fell to ground, more officers arrived on the scene, and he was handcuffed. Rossi further claims that although he was bloodied, handcuffed and subdued, he was struck many more times by Rohling's flashlight. Because of the extent of his injuries, paramedics were called to the scene and an ambulance transported him to the hospital for prompt medical attention.

Rohling claims that Rossi exited his vehicle after he parked it in the driveway. Rohling states that he remained behind the door of his patrol car, attempted to initiate a high-risk vehicle approach, and gave Rossi verbal commands. He was almost immediately joined by Officer Jennifer Frank who was in the area of the pursuit. She parked just to the right of Rohling's patrol car. Both officers had their primary service weapons drawn. Rohling claims that Rossi began to approach him, fists clenched, and both officers began holstering their weapons upon observing that Rossi did not have a weapon. Rohling states that while he was holstering his firearm Rossi attempted to punch him in the head, but he ducked and the blow landed on his neck. When Rossi threw a second punch, Rohling attempted a cross strike to Rossi's upper body region with the flashlight in his left hand. Although Rohling attests he did not intend to strike Rossi in the head, the flashlight did make contact with Rossi's right temple, causing him to fall to the ground. Rohling claims he had limited control of the flashlight because he is right-handed; he also claims that Rossi moved his head into the strike path.

During this exchange of blows, Officer Frank states that she was running around the back of Rohling's patrol car and did not see the altercation. However, she does admit that she saw Rossi on the ground and attempting to get back on his feet. At this point, a third officer, James Crawford, arrived at the scene. The officers were able to hold Rossi to the ground as he resisted their efforts to handcuff him. After Rossi was subdued, the officers radioed for medical care and he was transported by ambulance to a nearby hospital. Other than the single unintentional strike by Rohling, all of the officers at the scene deny striking Rossi at any time.

Based on these events, Rossi brings this suit alleging at least thirteen violations of his constitutional, statutory and common law rights.

## III.    CONTENTIONS OF THE PARTIES

### A.    The Defendants' Contentions[1]

The defendants argue that summary judgment is appropriate for the claims against Officer Rohling because he is entitled to qualified immunity, and the plaintiff cannot negate the defense. They also argue that the claims against the unnamed officers should be dismissed because it has been nearly two years since the complaint was filed and Rossi has yet to identify the John Does. Furthermore, they contend that Rossi's has failure to comply with the service requirements of Federal Rule of Civil Procedure 4(m) requires dismissal. In the alternative, the defendants argue that the unnamed officers are entitled to qualified immunity because Rossi cannot show that any of their conduct violated a federal right or that their actions were objectively reasonable in light of clearly established law. The defendants also contend that Rossi has not pled a viable conspiracy claim under 42 U.S.C. § 1985; his allegations are overly generic

---

[1] The defendants have not moved for summary judgment on Rossi's claims of the right to be free from negligence in the performance of police duties, to be free from summary punishment without trial, to be free from malicious prosecution, to be free from false imprisonment, to be free from false arrest and to be free from denial of counsel. *See* Org. Compl. § E ¶ 29 (g) – (j), (l), (n). The Court expresses no opinion on these claims.

and do not satisfy the requisite culpability and causation requirements to establish municipal liability; and his state law claims are barred because he did not provide timely notice to the City and because the City is immune from liability for the intentional torts of its employees.

### B.  Rossi's Contentions

Rossi argues that summary judgment is inappropriate for any claim. Rossi maintains that fact issues abrogate Officer Rohling's invocation of qualified immunity. He also contends that he was unaware of the identities of the other officers present at the scene of his arrest until Rohling's deposition on December 6, 2013, and he will promptly file for leave to amend his complaint to identify the John Does by name. Moreover, Rossi argues, the unnamed officers are not entitled to qualified immunity because they failed to intervene upon witnessing Rohling blantantly violating Rossi's constitutional rights. Rossi also outlines the nature of his conspiracy claim, and argues that he has put forth the evidence necessary to establish municipal liability against the City. Finally, Rossi contends that the email his mother sent to Houston Mayor Annise Parker on April 7, 2010, a mere six days after the event that gave rise to his claims, is well within the prescribed notice period.

## IV.  STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d

407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536,

540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, (1986)).

## V.   ANALYSIS AND DISCUSSION

### A.   Claims Against Officer Rohling

The doctrine of qualified immunity reconciles the competing aims of vigorous enforcement of the law and redress for victims of officials' unlawful abuse of power. *See Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004). Law enforcement officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This standard, which relies on the objective reasonableness of an official's conduct as measured by reference to clearly established law, avoids excessive disruption of government functions, but also permits claims to proceed where an official could be expected to know that certain conduct would violate an individual's federal rights. *Id.* at 350.

In a motion for summary judgment, an official asserting the affirmative defense of qualified immunity need only do so in good faith. *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). The official is not required to meet the typical summary judgment burden for a claim of immunity. *Id.* Rather, once the official asserts the defense, the burden shifts to the plaintiff to negate it. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "When a defendant pleads qualified immunity as an affirmative defense and moves for summary judgment on that basis, a court must decide (1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009). Officer Rohling has asserted qualified immunity and seeks summary judgment on Rossi's claims of unreasonable and warrantless seizure, seizure without probable cause, and use of excessive force.[2]

### i. Seizure Claims

"The Fourth Amendment requires that all arrests be based on probable cause." *United States v. Webster*, 162 F.3d 308, 331 (5th Cir. 1998). Although the Supreme Court "has expressed a preference for the use of arrest warrants when feasible, it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant." *Gerstein v. Pugh*, 420 U.S. 103, 113 (1975). Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Webster*, 162 F.3d at 331 (quoting *Gerstein*, 420 U.S. at 113). Accordingly, if Officer Rohling had probable cause to support Rossi's arrest, both seizure claims necessarily fail.

---

[2] In his complaint, Rossi alleges unreasonable and warrantless search and seizure and search and seizure without probable cause. However, the facts alleged in the complaint do not indicate that a search of Rossi's person or effects occurred. Therefore, the Court will only refer to Rossi's seizure claims.

It cannot be seriously disputed that Rohling had cause to believe that Rossi was engaged in unlawful activity—namely, evading a police officer attempting to perform a traffic stop. [3] Because the facts were sufficient to warrant the belief that Rossi had committed a crime, the Court grants Rohling summary judgment on both seizure claims.

### ii.    Excessive Force Claim

The right to make an arrest necessarily carries with it the right to use some degree of force or threat to affect the arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). The Fourth Amendment, however, prohibits the use of excessive force by law enforcement officers in the context of an arrest or investigatory stop of a free citizen. *Id.* at 394. Claims of excessive force are analyzed under a "reasonableness" standard. *Id.* at 395.

To abrogate an officer's claim of qualified immunity at the summary judgment stage, the plaintiff must overcome two hurdles. First, the plaintiff must point to a genuine issue of material fact as to whether he sustained "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was clearly unreasonable." *Tolan v. Cotton*, 713 F.3d 299, 304 (5th Cir. 2013) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)). Second, the plaintiff must establish a genuine dispute of material fact as to "whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the [defendant's conduct] was *objectively unreasonable* in the light of that then clearly established law." *Id.* at 305 (quoting *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998) (emphasis and alteration in original)). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the

---

[3] State law provides the following in pertinent part: "A person commits an offense if he intentionally flees from a person he knows is a peace officer…attempting lawfully to arrest or detain him." TEX. PEN. CODE § 38.04(a).

federal statute as alleged by the plaintiff." *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original).

The Court will now determine whether Rossi has met this burden.

### a.    Qualified Immunity—Prong One

It is undisputed that when Rossi was transported to the hospital, after being handcuffed and subdued by officers, medical personnel determined that he sustained a number of injuries, including an orbital floor fracture and internal hemorrhaging. It is also undisputed that these injuries resulted from Rohling striking Rossi.

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). Important factors to consider include "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. When determining the objective reasonableness of the force employed by a peace officer, a court must examine the level of force used versus the need for that force. *See Staten v. Adams*, 939 F.Supp.2d 715, 726 (S.D. Tex. 2013) (citing *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). "The need for force determines how much force is constitutionally permissible." *Id.* (quoting *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)).

There is a genuine dispute as to what occurred after Rossi and Officer Rohling exited their vehicles. Viewing the facts in the light most favorable to the plaintiff, Rohling's blow to Rossi's right temple and the continued strikes to Rossi's head after he fell to the ground were clearly excessive to any perceived need to affect an arrest. This is especially true in light of the

fact that there were two other officers on the scene, meaning Rossi was not only unarmed, but also outnumbered. Furthermore, that excessiveness was patently unreasonable.

Having determined that Rossi has pointed to a genuine issue of material fact so as to overcome the first hurdle of the qualified immunity analysis, the Court will now determine whether the allegedly violated Forth Amendment right was clearly established at the time of the incident; and, if so, whether Officer Rohling's conduct was objectively unreasonable.

### b.        Qualified Immunity—Prong Two

By April 1, 2010, the day of this incident, the law was clearly established in the Fifth Circuit that "repeatedly striking a non-resisting suspect is excessive and unreasonable force." *Brown v. Lynch*, 524 F. App'x 69, 81 (5th Cir. 2013) (citing cases). Because the parties dispute the events of that morning, the Court is unable to make a determination as to the objective reasonableness of Rohling's actions. *See Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("This court [is] unable to make the determination of the objective reasonableness of the officer's activities without settling on a coherent view of what happened in the first place.") (internal quotation omitted). However, if the facts are as Rossi asserts, the Court is of the opinion that Rohling's actions were objectively unreasonable.

Because Rossi has identified fact issues sufficient to negate Rohling's claim of qualified immunity, the Court denies the defendants' motion for summary judgment on the excessive force claim.

### B.        Claims Against Unnamed Officers

In response to the defendants' argument that the unnamed officers should be dismissed from this action, Rossi stated that he would "ask for leave of this court to file simultaneously with this response, an amended pleading which identifies the John Doe police officers by name."

[P.'s Resp. to Mot. for Summ. J. § II. B.] In the eight weeks since Rossi filed his response, he has neither petitioned for leave nor filed an amended pleading. Moreover, Rossi has also failed to comply with Rule 4(m)'s time limit for service. *See* FED. R. CIV. P. 4(m). Although Rossi has stated a cognizable claim of bystander liability[4] against the John Does, he has been deficient in meeting these procedural obligations.

The Court orders Rossi to file an amended complaint naming the John Does and to serve those officers. The amended complaint must be filed and the officers must be served within thirty (30) days.

### C.      Conspiracy Claim

Federal law proscribes conspiring to deprive an individual of their constitutional and statutory rights. *See* 42 U.S.C. § 1985(3). The only defendants in this suit are the City and certain of its police officers. "The City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves." *Swilley v. City of Houston*, 457 F. App'x 400, 404 (5th Cir. 2012) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). Accordingly, the Court grants the defendants summary judgment on this claim.

### D.      Municipal Liability

A plaintiff seeking to impose section 1983 liability on a municipality is required to identify a governmental policy or custom that caused his injury. *See Board of Cnty Com'rs of Bryan Cnty, Okl. V. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Specifically, the plaintiff must prove: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or

---

[4] *See Hale v.Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983.").

custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2012) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In other words, liability cannot attach on a *respondeat superior* basis; rather, "the municipality must cause the constitutional tort." *James v. Dallas Hous. Auth.*, 526 F. App'x 338, 394 (5th Cir. 2013) (quoting *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008)).

Rossi's theory of liability is that the City's inadequate hiring and training policies, which the City was deliberately indifferent[5] in adopting, ultimately led to his injury. In the hiring context, the plaintiff must show that the decision to hire a particular individual reflects "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 219 F.3d at 460-61 (internal quotation omitted). Specifically, "there must be evidence that would support a finding that it was obvious that the offending officer in question was 'highly likely to inflict the particular injury suffered by the plaintiff." *Id.* at 461 (internal quotation omitted). In the failure-to-train context, the plaintiff must establish that the municipality's training procedure was inadequate, that the inadequacy directly led to his rights being violated, and the municipality was deliberately indifferent to the risk of harm presented by the training procedure when it was adopted. *See Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010).

The plaintiff's allegations, and the accompanying summary judgment evidence, do not satisfy the high threshold showing necessary for the imposition of municipal liability. The allegations in the complaint are simply a formulaic recitation of the *Monell* cause of action, and the summary judgment response does not even attempt to identify the specific portions of the

---

[5] "Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. The causation element demands that the plaintiff show that the objectionable municipal policy was the moving force behind the plaintiff's injury." *Brown v. Bryan Cnty, OK*, 219 F.3d 450, 457 (5th Cir. 2000) (internal quotations omitted).

City's hiring and training policies that are claimed to be deficient. It is not enough to merely allege that "policy deficiencies within the Houston Police Department are inherently linked to Mr. Rossi's injuries," and aver to an article in The Huffington Post and an on-going investigation by the United States Department of Justice. Those things neither evidence that the City should have known that Officer Rohling was highly likely to use excessive force in the execution of his duties, nor do they show that the training he received was inadequate (let alone that the alleged inadequacy led to Rossi's injuries).

On this record, the Court finds that summary judgment is appropriate for all federal claims asserted against the City of Houston.

### E. State Law Claims Against the City

The Texas Tort Claims Act requires a claimant to provide a municipality with formal, written notice of a claim against it within six months of the incident giving rise to the claim. *See* TEX. CIV. PRAC. & REM. CODE § 101.101. The Act also approves of a shorter notice period if established by a municipal charter or ordinance *Id.* However, the Act expressly states that no formal notice requirement applies if the municipality has "actual notice" of a claim. *Id.*

The defendants argue that summary judgment must be granted on Rossi's claims because he did not provide the required notice within the ninety-day period prescribed by the Charter of the City of Houston. *See* Charter of the City of Houston, Art. IX § 11. Rossi has provided evidence that his mother sent an email to Houston Mayor Annise Parker that described the events of April 1, 2010. This email, he argues, satisfies the notice requirement.

It is well-settled that failure to abide by notice requirements is fatal to a claim. *See City of Houston v. Torres*, 621 S.W.2d 588, 590 (1981). Although the email to Mayor Parker would presumably create at least a fact issue as to whether the notice requirement was satisfied, that is

not the case here; it is clear that the email did not contain all the information required by the applicable provision of the Houston Charter.[6] However, because the City had actual notice of Rossi's claim, it was not necessary for him to provide written notice. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(c); *see also Cathy v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) ("Actual notice to a governmental unit requires knowledge of (1) a death, injury, or property damages; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved."). Rossi's sworn affidavit, submitted on April 14, 2010, as part of his formal complaint against Officer Rohling and the Houston Police Department, certainly gave the City actual notice of his claim. Therefore, the Court rejects the defendants' argument that Rossi's state law claims against the City fail because he did not provide written notice.

The defendants also argue that Rossi's state law claims against the City fail because the Texas Tort Claims Act does not abrogate governmental immunity with respect to intentional torts. *See* TEX. CIV. PRAC. & REM. CODE § 101.057. Assault and battery and intentional infliction of emotion distress are both intention torts. *Id.*; *see also Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993). Section 101.057 of the Act is explicit; it "shields municipalities from suits arising out of intentional torts committed by governmental employees." *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993) (citing *City of Waco v. Hester*, 805 S.W.2d 807, 810-12 (Tex.App.—Waco 1990, writ denied). Rossi does not contest this conclusion. Accordingly, the Court grants the City summary judgment on Rossi's state law claims.

---

[6] For example, the email did not state "the amount for which [Rossi] will settle." Charter of the City of Houston, Art. IX § 11.

VI.     **CONCLUSION**

      For the foregoing reasons, the Court GRANTS in part and DENIES in part the

defendants' motion for summary judgment.

      It is so **ORDERED**.

      SIGNED on this 21st day of February, 2014.

                                  _____

                                  Kenneth M. Hoyt
                                  United States District Judge